IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TOBIUS DAVIES, #A1014982,<br><br>       Plaintiff,<br><br>   v.<br><br>SGT. LANA HEICK, et al.,<br><br>       Defendants. | Civ. No. 20-00173-LEK-RT<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT IN PART AND DIRECTING SERVICE |

## I. **INTRODUCTION**

Before the Court is Plaintiff Tobius Davies' Second Amended Complaint ("SAC") brought pursuant to 42 U.S.C. § 1983.  SAC, ECF No. 15.[1]  Plaintiff alleges Defendants Oahu Community Correctional Center ("OCCC") Warden Francis Sequeira, Sergeant Lana Heick, and Case Manager Calvert Willeamson violated his constitutional rights during his current confinement at OCCC.

The Court has screened the SAC pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a).  Plaintiff's First Amendment claims against Defendant Heick in Count I (retaliation) and against Warden Sequeira in Count III (free exercise of religion) state plausible claims for relief, shall be served, and require a response.

---

[1] The Court refers to the electronic numbering and pagination system used for all filings in the District of Hawaii.

Plaintiff's remaining claims in Counts I, II, and III fail to state a claim and are DISMISSED as specified below.[2]

## II. <u>STATUTORY SCREENING</u>

The Court must conduct a pre-Answer screening of all prisoners' pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). During this screening, claims or complaints that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

In determining whether a complaint should be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court applies the same standard as that under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015). All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiffs. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020).

A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[2] To the extent the Court dismisses some of Plaintiff's claims without prejudice, he is not prohibited from moving to amend these claims if he is able to allege facts stating a claim. *See* Fed. R. Civ. P. 15.

inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, the "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me accusation" does not meet this plausibility standard. *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

The Court liberally construes a pro se litigant's pleadings and affords him the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Although the Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint, *Lopez*, 203 F.3d at 1130, if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## III.  <u>BACKGROUND</u>

Plaintiff originally alleged that Defendants unlawfully retaliated against him and violated his right of access to the courts. *See generally*, Compl., ECF No. 1. The Court dismissed the Complaint with leave granted to amend. *See* Order, ECF No. 7.

Plaintiff timely filed a First Amended Complaint ("FAC") again alleging Defendants unlawfully retaliated against him and violated his right of access to the courts, and denied him the ability to practice freely his religion. *See* FAC, ECF No. 8 at 55. Additionally, Plaintiff alleged that Defendants violated the Eighth and Fourteenth Amendments due to the conditions of his confinement and their failure to protect him. *Id.* at 55-62.

The Court dismissed Plaintiff's denial of access to the courts claims, due process claims for the denial of grievances, and conditions of confinement claims alleged under the Eighth Amendment with prejudice. *See* Order, ECF No. 14 at 140-44. Plaintiff's claims that Warden Sequeira violated the First Amendment because his cell was too small to pray in, and his Fourteenth Amendment conditions of confinement claims were dismissed with leave to amend. *Id.* at 149-50, 151-54. The Court decided Plaintiff's retaliation claim against Heick could proceed. *Id.* at 145-47.

On July 20, 2020, Plaintiff filed the SAC. *See* SAC, ECF No. 15. In Count I, Plaintiff alleges that Heick retaliated against him for submitting grievances by (1) denying him writing supplies and grievance forms when she was on duty in the special holding unit ("SHU"); (2) instructing other officers to do the same; (3) limiting him to filing one grievance per day; (4) moving him from the first floor to a third-floor cell "where she knew [that] his life would be in danger;"

4

(5) throwing away Plaintiff's "legal work" during this transfer; and (6) refusing Plaintiff's request for medical treatment the day after an alleged assault. *Id.* at 163-67.

In Count II, Plaintiff alleges that Willeamson denied him access to the courts by (1) refusing to give him a pen, envelopes, "legal supplies," or more than six sheets of paper; (2) blocking some of his personal and legal calls; and (3) placing a "pin block" on the facility telephone, which prevented Plaintiff from calling his court-appointed counsel. *Id.* at 170-73.

In Count III, Plaintiff again claims that Warden Sequeira wrongfully denied his grievance appeals and refuses to address his claims that the SHU has no lights, no sheets, no pens, rusty pipes, cockroaches, and provides inadequate clean clothes. *Id.* at 176. Plaintiff also claims Warden Sequeira failed to protect him from violence, although he is aware of Plaintiff's past association with the USO Family gang. *Id.* at 174. Plaintiff claims that, on January 17, 2020, corrections officers "put a hit" on him. *Id.* at 174. Plaintiff notes a February 12, 2020 incident during which another inmate reached through the bars of Plaintiff's third-floor cell and bent back his finger, and he claims to have been assaulted in a van while being taken to court on February 27, 2020. *Id.* at 175.

Plaintiff alleges that Warden Sequeira houses two inmates in a one-person cell, which prevented him from being able to pray during Ramadan. *Id.* at 178.

Plaintiff also alleges that OCCC officials refused to provide him with additional food before sunrise and after sunset, although they knew he was fasting during Ramadan. *Id.* This resulted in Plaintiff being limited to one meal a day during Ramadan. *Id.* Moreover, Plaintiff says that he was served pork although Muslims generally do not eat pork. *Id.* He claims that Warden Sequeira refused to speak with the kitchen staff at OCCC to resolve these issues. *Id.*

Plaintiff seeks monetary damages and other "relief the court deems proper." *Id.* at 179. Specifically, he seeks to have OCCC create a "protective custody module" and complete repairs to the SHU. *Id.* He also seeks to have OCCC provide pens and "legal supplies" to indigent inmates. *Id.* Finally, Plaintiff requests a jury trial and that counsel be appointed. *Id.* at 159.

## IV.  DISCUSSION

### A.  Legal framework for claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must also link a defendant's actions and the alleged deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980).

6

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and he or she must affirmatively link that injury to the violation of his or her rights.

## B. First Amendment claims

### 1. Prison grievances and retaliation

The First Amendment guarantees a prisoner the right to seek redress of grievances from prison authorities. *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five basic elements: (1) an assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action; (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Id.*

7

### a. Heick

Plaintiff alleges that Heick retaliated against him for filing grievances against her.  ECF No. 15 at 163-69.  These allegations support a plausible inference that Plaintiff's grievances were a "substantial" or "motivating" factor behind Heick's alleged retaliation.  *See Brodheim*, 584 F.3d at 1269, 1271. Plaintiff's retaliation claim in Count I against Heick shall be served and requires a response.

### b. Willeamson

In Count II, Plaintiff briefly suggests that Willeamson also retaliated against him, by blocking his personal and legal calls.  *See* ECF No. 15 at 172.  Plaintiff does not allege that Willeamson did these things because of Plaintiff's protected First Amendment conduct.  *See id.* at 170-73.  Thus, Plaintiff fails to state a retaliation claim against Willeamson and this claim is DISMISSED without prejudice.

### 2. Free exercise of religion

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citation omitted). To establish a violation of the Free Exercise Clause, a prisoner must show that a defendant burdened the practice of his religion without any justification reasonably

related to legitimate penological interests.  *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).  To determine whether a prison condition or rule is legitimate and reasonable, the Court looks at: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives", or, in other words, whether the rule at issue is an "exaggerated response to prison concerns."  *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

Plaintiff alleges Warden Sequeira houses two inmates in a one-person cell. *See* ECF 15 at 178.  Plaintiff alleges this provides insufficient room for him to pray during Ramadan.  *Id.*  Plaintiff also alleges that he was denied sufficient food during Ramadan, because he was given breakfast only and no food after sunset.  *Id.* He was also given pork, which Muslims generally do not eat.  *Id.*  Plaintiff says Warden Sequeira refused to discuss these issues with the kitchen staff.  *Id.* Plaintiff's First Amendment claims in Count III against Warden Sequeira state a plausible claim for relief, shall be served, and require a response.

## C. Fourteenth Amendment claims

### 1. Due process: Right of access the courts

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). A denial of access to the courts may arise from the hindrance of "a litigating opportunity yet to be gained" or from the loss of a suit that cannot now be tried. *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (noting "two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference"), *overruled on other grounds by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).

An "actual injury" is a threshold requirement for an access-to-the-courts claim. *Lewis*, 518 U.S. at 351-53; Silva, 658 F.3d at 1104. Actual injury is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). The failure to allege an actual injury to a "'non-frivolous legal claim'" is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting *Lewis*, 518 U.S. at 353 & n.4).

Plaintiff cannot state a claim for denial of access to the courts in proceedings in which he is represented by counsel. *United States v. Wilson*, 690 F.2d 1267, 1271 (9th Cir. 1982) (holding access to a court-appointed attorney satisfies prison authorities' obligation to provide prisoners meaningful access to the courts); *see also Smith v. Cty. of Santa Clara*, 223 F. App'x 701, 702 (9th Cir. 2007) (affirming dismissal of a pretrial detainee's claim that prison officials denied him adequate access to a law library because he had court-appointed counsel); *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 855 (9th Cir. 1985) (holding that "a prison must provide inmates with access to an adequate law library or, in the alternative, with adequate assistance from persons trained in the law"); *Senters v. Circuit Court of Or. for Lane Cty.*, 2020 WL 1281233, at *2 (D. Or. Mar. 16, 2020) (same).

The Court has reviewed Plaintiff's publicly available state court dockets in Cr. Nos. 1PC151-001332 and 1DTA-19-02042. https://www.courts.state.hi. In 1DTA-19-02042, Plaintiff was referred to the public defender upon arrest and released. *See* 1DTA-19-02042, Dkt. 3. Plaintiff was later arrested pursuant to a bench warrant and was represented by Deputy Public Defender ("DPD") J. Tanaka at his December 18, 2019 initial hearing. *Id.*, Dkts. 11-13. On December 26, 2019, Plaintiff moved to represent himself as a "sovereign citizen," and DPD Sarah M. Nishioka moved to withdraw. *Id.* at Dkt. 21. The court allowed Nishioka to withdraw, but appointed Tae Won Kim, Esq., to represent Plaintiff the next day.

11

*Id.* at Dkt. 19.  On January 2, 2020, Plaintiff stated that he did not want an attorney with a bar license, and Kim moved to withdraw.  *Id.* at Dkt. 25.  The court granted Kim's motion, but appointed W. Li, Esq., to represent Plaintiff on January 22, 2020, who has represented Plaintiff since.  *Id.* at Dkt. 37.

In 1PC151-001332, Plaintiff was arrested on December 19, 2019, pursuant to a bench warrant issued for revocation of probation.  *See* 1PC151-001332, Dkt. 128-33.  On January 7, 2020, the Office of the Public Defender, which had represented Plaintiff in the original case, moved to withdraw because Plaintiff had refused to be represented by a DPD in 1DTA-19-02042.  *Id.* at Dkt. 134.  On January 22, 2020, the court appointed Aaron Wills, Esq., as substitute counsel in Plaintiff's revocation proceedings.  *Id.* at Dkt. 137.  On March 20, 2020, Plaintiff's revocation proceedings were continued for ninety days, pursuant to the Hawaii Supreme Court's emergency orders regarding COVID-19.  *Id.* at Dkt. 141.  Mr. Wills filed motions for Plaintiff's release and participated in status conferences. *Id.* at Dkt. 144, 146.  On July 24, 2020, the court appointed Randal Shintani, Esq., to represent Plaintiff.  *Id.* at Dkt. 174.  The court recently continued the matter until January 8, 2021.  *Id.* at Dkt. 192.

These public records make clear that Plaintiff has been represented by counsel throughout both state court criminal cases since his arrest.  Plaintiff cannot show an actual injury to these ongoing state proceedings while he is represented by

counsel.  Moreover, Plaintiff shows no actual injury, such as missed deadlines or adverse decisions, regardless of whether he is represented by counsel.

To the extent Plaintiff alleges that he has suffered an actual injury because he has been incarcerated for longer than the charges in 1DTA-19-02042 warrant, he fails to state a claim.  While Plaintiff's criminal traffic charges may carry a sentence of only thirty days, he was released on his own recognizance in 1DTA-19-02042 on April 6, 2020.  *See* 1DTA-19-02042, Dkt. 83.  Plaintiff's conviction in 1PC151-001332, a Class C felony, carries the possibility of a five-year term if his probation is revoked, however, and it is this case in which he is being held.  *See* HRS §§ 708-811, 706-660.

To the extent Plaintiff claims that he is unable to challenge the conditions of his confinement in the SHU, that is not so.  Plaintiff has filed two federal suits against OCCC prison officials, in which he submitted complaints, in forma pauperis applications, motions for appointment of counsel, amended pleadings, and a TRO Motion.  He has missed no deadlines in either of these cases.

Plaintiff fails to show that he has suffered any "actual prejudice" with respect to any past, present, or contemplated case, and therefore fails to state a colorable claim for the denial of access to the courts.  *Lewis*, 518 U.S. at 348; *Jones*, 393 F.3d at 936; *Iqbal*, 556 U.S. at 678.  Plaintiff's access-to-the-courts claims in Counts I, II, and III, are again DISMISSED with prejudice.

13

### 2.  Due process: conditions of confinement

Because Plaintiff is awaiting a decision on the revocation of probation, the Court reviews his conditions-of-confinement claim under the Fourteenth Amendment rather than the Eighth Amendment.[3]  *See Ressy v. King Cty.*, 520 F. App'x 554, 554-55 (9th Cir. 2013) (treating prisoner held in "pre-hearing detention for a probation violation" as a "pretrial detainee"); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (holding pretrial detainees are protected under the Fourteenth Amendment); *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018), *cert. denied sub nom. Cty. of Orange, Cal. v. Gordon*, 139 S. Ct. 794 (2019) (holding pretrial detainees' claims alleging v. inadequate medical care arise under the Fourteenth Amendment, and are evaluated under an objective deliberate indifference standard).

A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt.  *Bell*, 441 U.S. at 535.  Pretrial detainees, like convicted prisoners, are entitled to "adequate food, clothing, shelter, sanitation, medical care, and personal safety."  *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).  To state a claim for

---

[3]  Plaintiff cites the Eighth Amendment at various points in the SAC.  *See* ECF No. 15 at 163, 170, 174. Plaintiff's Eighth Amendment claims remain DISMISSED with prejudice.  *See* Order, ECF No. 14 at 150-51.

unconstitutional conditions of confinement against an individual defendant, a

pretrial detainee must allege facts that show: (1) the defendant made an intentional

decision with respect to the conditions under which the plaintiff was confined;

(2) those conditions put the plaintiff at substantial risk of suffering serious harm;

(3) the defendant did not take reasonable available measures to abate that risk,

even though a reasonable official in the circumstances would have appreciated the

high degree of risk involved–making the consequences of the defendant's conduct

obvious; and (4) by not taking such measures, the defendant caused the plaintiff's

injuries.  *Gordon*, 888 F.3d at 1125.

Determining whether a defendant's conduct and the prisoner's conditions of

confinement rise to the level of a constitutional violation is an objective assessment

that turns on the facts and circumstances of each particular case.  *Id.*; *Hearns v.

Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).  However, "a de minimis level of

imposition" of punishment is insufficient.  *Bell*, 441 U.S. at 539 n.21.  The "'mere

lack of due care by a state official' does not deprive an individual of life, liberty, or

property under the Fourteenth Amendment."  *Castro v. Cty. of L.A.*, 833 F.3d 1060,

1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).

A pretrial detainee must "prove more than negligence but less than subjective

intent–something akin to reckless disregard."  *Id.*

### a. Conditions in Plaintiff's third-floor cell

Plaintiff alleges that Warden Sequeira ignored his complaints about the dim lighting, lack of sheets, cockroaches, rusty pipes that cause drinking water to be yellow, and lack of clean clothing and towels. ECF No. 15 at 176. These allegations fail to state a claim for at least two reasons. First, Plaintiff does not allege that Warden Sequeira intended these conditions to be punitive. Indeed, Plaintiff does not claim that the conditions in his third-floor cell were any different from those experienced by all other inmates on that floor.

Second, Plaintiff fails to allege facts articulating a plausible claim for relief. Plaintiff admits that he has a desk, bed, mattress, a blanket, and a fresh uniform each week. *Id.* at 176. These conditions do not constitute less than the minimal civilized measure of life's necessities. Plaintiff fails to show that Warden Sequeira placed him at substantial risk of suffering serious harm. Nor does he show that Warden Sequeira failed to take reasonable steps to abate any objectively high risk to his health or safety. Plaintiff also fails to explain what serious harm or injury he suffered, beyond being uncomfortable and unable to read at night.

Plaintiff fails to state a claim for relief against Warden Sequeira in Count III regarding the conditions in his cell and these claims are DISMISSED without prejudice.

### b. Failure to protect

"[P]rison officials have a duty . . . to protect prisoners from violence."

*Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (quoting *Rhodes v. Chapman*,

452 U.S. 337, 347 (1981) (further citations omitted)); *Castro v. Cnty. L.A.*, 833

F.3d 1060, 1070 (holding the Fourteenth Amendment's objective standard applies

to pretrial detainees' failure-to-protect claims).  While a prison official need not

"believe to a moral certainty" that an inmate is at risk of harm, "before [he] is

obligated to take steps to prevent such an assault," he must have more than a "mere

suspicion" that an attack will occur.  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th

Cir. 1986).  The obviousness of the risk may be sufficient.  *See Farmer*, 511 U.S.

at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).  But "speculative

and generalized fears of harm . . . do not rise to a sufficiently substantial risk of

serious harm."  *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007).

### i.   Warden Sequeira

Plaintiff complains that OCCC has no protective housing unit and, although

prison officials knew of his past gang membership, he was placed in the SHU,

initially on the first floor and then on the third floor, rather than in protective

custody.  ECF No. 15 at 174.  Plaintiff fails to allege any facts showing that

Warden Sequeira intentionally placed him in the SHU, or specifically on the third

floor, knowing that this would put Plaintiff at a substantial risk of suffering serious

17

harm.  Plaintiff does not say that Warden Sequeira had any involvement in his move from the first floor to the third floor of the SHU.  Nor does Plaintiff allege that his cellmate on the third floor was a rival gang member or in the gang that Plaintiff renounced.  Plaintiff therefore fails to allege any facts showing that Warden Sequeira knew of and failed to take reasonable measures to abate a risk that Plaintiff would be seriously harmed on the third floor.

Likewise, Plaintiff fails to allege facts showing that his transfer to the third floor SHU cell caused him serious injury.  Plaintiff notes only the February 12, 2020 incident, during which another inmate allegedly reached through the bars of Plaintiff's cell and bent back his finger.  *See id.* at 165, 167.  Although Plaintiff claims that he sought medical treatment the following day, *id.* at 167, he fails to describe the extent of his injury, whether his finger was sprained, broken, or simply sore.  Nor does he allege facts showing that Warden Sequeira or any prison official *knew* that this prisoner intended harm to Plaintiff.  Accordingly, Plaintiff's failure-to-protect claim against Warden Sequeira in Count III is DISMISSED with prejudice.

### ii.   Heick

Plaintiff claims that Heick moved him to the third-floor cell knowing that "his life would be in danger," *id.* at 164, and "so [he] would get hurt," *id.* at 168.

18

Plaintiff contends that, the day after Heick moved him to the third floor, another inmate reached through the bars of his cell and bent back his finger. *Id.* at 165.

As discussed above, however, Plaintiff does not allege facts showing that his relocation to the third floor created a substantial risk of serious harm to him. While it is certainly concerning that another inmate bent back Plaintiff's finger, nothing in the SAC suggests that this resulted in serious harm to Plaintiff. Nor does anything in the SAC otherwise plausibly support a finding that Plaintiff faces a substantial risk of serious harm on the third floor. Moreover, Plaintiff fails to allege facts showing that Heick failed to take reasonable available measures to abate any risk to Plaintiff following the February 12, 2020 assault. As noted *supra*, Plaintiff does not allege that his third-floor cellmate was a rival gang member or in the gang that Plaintiff renounced. Accordingly, Plaintiff's failure-to-protect claim against Heick in Count I is DISMISSED with prejudice.

### 3. Due process: denial of grievance

A prison official's denial of a grievance or allegedly improper processing of a prisoner's grievances or appeals, without more, is not a sufficient basis for liability under 42 U.S.C. § 1983. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (stating prisoners have no "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding no due process violation based on improperly

processed grievances); *see also Todd v. Cal. Dep't of Corr. and Rehabilitation*, 615 F. App'x 415, 415 (9th Cir. 2015) (same); *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (affirming dismissal of claims against defendants who "were only involved in the appeals process") (citing *Ramirez*, 334 F.3d at 860). "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

The Court dismissed with prejudice Plaintiff's denial of grievances claim against Warden Sequeira. *See* Order, ECF No. 14 at 148-49. Plaintiff's due process claims based on Warden Sequeira's denial of his grievance appeals remain DISMISSED with prejudice.

### 4. Equal protection claims

The Equal Protection Clause of the Fourteenth Amendment requires the state to treat all similarly situated people equally. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the

20

plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998).

Although Plaintiff cites the Equal Protection Clause of the Fourteenth Amendment, *see* ECF No. 15 at 163, he fails to allege that he is a member of a protected class or that any Defendant acted with an intent or purpose to discriminate against him based on his membership in such a class. Plaintiff's equal protection claims against Heick, Willeamson, and Warden Sequeira in Counts I, II, and III, are DISMISSED without prejudice.

## E.  Fifth Amendment claims

Plaintiff also cites the Fifth Amendment at various points in the SAC. *See* ECF No. 15 at 163, 170, 174. The Fifth Amendment's Due Process Clause, however, "only applies to the federal government." *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008). Because Plaintiff is in state custody alleging constitutional violations by state actors, the Fifth Amendment does not apply, and his Fifth Amendment claims in Counts I, II, and III against Heick, Willeamson, and Warden Sequeira are DISMISSED with prejudice.

## F.  Request for court-appointment counsel

Plaintiff again requests court-appointed counsel. ECF No. 15 at 159. There is no constitutional right to counsel in a civil case where, as here, a litigant's liberty is not at issue. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). The

court's discretion to appoint pro bono counsel is governed by several factors, including a plaintiff's likelihood of success on the merits and ability to articulate the claims in light of their complexity.  A plaintiff must show "exceptional circumstances" that support the appointment of counsel.  *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

Plaintiff can read, write, and articulate his claims.  His claims are not particularly complex nor do they show exceptional circumstances supporting the appointment of counsel.  Until Defendants are served and have answered, the Court cannot determine Plaintiff's likelihood of success on the merits or whether there are exceptional circumstances that justify the appointment of counsel. *Terrell*, 935 F.2d at 1017.  Plaintiff's request for court-appointed counsel is DENIED without prejudice to refiling after Defendants have filed an Answer or other response to the SAC.

## V.  CONCLUSION

Plaintiff's First Amendment retaliation claim against Defendant Heick in Count I and his First Amendment free-exercise claim against Warden Sequeira in Count III state a plausible claim for relief, shall be served, and require a response after service is perfected.

Plaintiff's access-to-the-courts, failure-to protect, denial-of-grievance, Eighth Amendment, and Fifth Amendment claims in Counts I, II, and III are DISMISSED with prejudice.

Plaintiff's First Amendment retaliation claim against Defendant Willeamson in Count II, his conditions-of-confinement claim in Count III, and his equal protection claims in Counts I, II, and III are DISMISSED without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).

Plaintiff's request for court-appointed counsel is DENIED without prejudice.

## VI.  SERVICE ORDER

IT IS HEREBY ORDERED:

(1)  The Clerk shall send the U.S. Marshal a copy of this Order, the Second Amended Complaint, and one completed summons for Defendants Sergeant Lana Heick, Case Manager Calvert Willeamson, and Warden Francis Sequeira.  The U.S. Marshals Service shall open a file and retain these documents for use in the event that Heick, Willeamson, and Warden Sequeira decline to waive service of the summons.

(2)  Per agreement with the Hawaii Department of Public Safety ("DPS"), the Clerk shall provide by electronic means to DPS liaisons Shelley Harrington and Laurie Nadamoto: (a) a copy of the Second Amended Complaint, ECF No. 15, copies of the First Amended Complaint and of this Order, and a completed Notice

of Lawsuit and Request for Waiver of Service of Summons form addressed to Defendants Heick, Willeamson, and Warden Sequeira; and (b) two completed Waiver of Service of Summons forms for Heick, Willeamson, and Warden Sequeira.

(3) Defendants shall have 30 days after the request for waiver of service of summons is sent to return the waiver to the U.S. Marshal, who shall file the waiver with the court. If any Defendant fails to do so within that time, the U.S. Marshal shall NOTIFY THE COURT, who will direct the U.S. Marshal to personally serve the summons and complaint on that Defendant. A personally served Defendant will be required to pay the costs of service.

(4) Defendants Heick, Willeamson, and Warden Sequeira shall respond to Davies' Second Amended Complaint within 60 days after electronic service if formal service is waived, or 45 days if service of the summons is not waived.

(5) Plaintiff shall, within one week of any change of address, notify the court. This notice shall contain only information about the change of address and its effective date and shall not include requests for other relief. Failure to file such notice may result in the dismissal of the action for failure to prosecute under Fed. R. Civ. P. 41(b).

(6) After Defendants have filed a response to the Second Amended Complaint, Plaintiff's documents are deemed served on any Defendant(s) or their

24

attorney(s) who participate in the court's Case Management Electronic Case Filing (CM/ECF) system.  The U.S. Marshal is not responsible for serving documents after service of the operative pleading.

IT IS SO ORDERED.

DATED:  September 29, 2020 at Honolulu, Hawaii.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

*Davies v. Heick, et al.*, No. 120-cv-00173-LEK-RT Scrg '20 (SAC serve retal., religious, dsm access, cond., protect, 8th, 5th) draft to chambers